## Zachariah Link *against* Hendrick Beuner.

THIS was an action to recover the amount, paid for
the services of a negro man named *Bartley*, and brought up
on the following case.

By an act of the legislature passed in 1788, proprietors
introducing slaves into this state, after the 1st day of *June*,
1785, were prohibited from selling them *as slaves*, and such
persons if " sold contrary to the true intent and meaning of
" the act," were declared to be free.

In 1794, *Jasper Parsons*, the former owner of the negro
in question, brought him into this state. On the 8th of *April*,
1801, by the 5th section of another law respecting slaves,
" it was enacted, " That if any person whatsoever, within
" this state, shall, under any colour or pretext whatever,
" sell as a slave, or transfer for any period whatever, any
" person who shall *hereafter* be imported or brought into
" this state as a slave," " every person so imported or
" brought into this state, and sold contrary to the true in-

A sale of the
services of a
slave, is the
same as a sale
of a slave. A
slave imported
into this state,
after *June*
1785, and sold
after *October*
1801, is with-
in the protec-
tion of the act
of 1788, and
entitled to be
free, notwith-
standing the
law of 1788, is
repealed by
that of *April*,
1801, he hav-
ing acquired
under the sta-
tute of 1788, a
right not to be
sold, which
right is pre-
served to him
by the proviso
in the repeal-
ing act of 1801.

Vol. III.                    S s

"tent and meaning of this act shall be free." On the same day it was ordained by another statute, 1 *Rev. Laws*, 619, *chap.* 189, that "all acts and parts of acts, heretofore passed "by the legislature of this state, which come within the pur-"view or operation of any of the acts passed during the "present session of the legislature, commonly called the "revised acts, shall be and the same are hereby repealed "from and after the first day of *October* next; *provided* "*however*, that such repeal shall not affect any act done, "*right accrued*, &*c.* previous to the said first day of *Octo-*"*ber* next, but every such act and *right* shall remain as va-"lid, &c. as if all the acts and parts of acts, hereby intend-"ed to be repealed, had remained in full force."

In *March*, 1803, when the negro above named was 18 years old, *Parsons*, for a *bona fide* consideration, transferred to the defendant his services for 20 years, by a regular indenture, containing a clause of manumission at the expiration of that time. In *April* 1804 the defendant for the sum of $225, by indorsement assigned the residue of the term to the plaintiff, into whose service the negro entered, but on the 15th of *August* following deserted it, claiming to be free.

It was now submitted to the court, whether, under the above circumstances, he was entitled to freedom? if so, the right to recover was admitted.

*Harison* for the plaintiff. This is a case, arising on the law, as it stood antecedent to the last statute on this subject. It must be considered on the footing of the act of 1788; for, that of 1801, did not introduce new regulations, so much as confirm the old, of which it makes a part. By the first of these statutes, slaves introduced into this state, after the first of *June*, 1785, and sold as such, are declared to be free.

But here it may be said, the negro in question was not sold as a slave. Allowing him not to have been disposed of *in totidem verbis* as a slave, the transfer is, in effect, the same, for it is to last for 20 years of the life of a man of eighteen. This would exhaust all the valuable portion of his existence, and if not within the strict letter of the law

of 1788, is clearly within the proviso of the 5th section of that of 1801. It is there declared, any person "under any colour or pretext," sold as a slave "or trans- ferred for any period whatever," "contrary to the true intent and meaning," of the act shall be free. The true intent and meaning of the legislative provisions, on this subject, were from the first, to prevent the importation and traffic in slaves. Courts have, therefore, been liberal in the exposition of these ordinances, and extended their principles to transactions not within the words, but the mischief. A case arose, where a man who had deserted from his master's service in another state, was sold here for a period, which would wear out the prime of his days, and yet, though he was not imported, nor sold as a slave, the court held the manner of a slave's entering into this state, to be an immaterial circumstance not inquirable into; and that the transfer, was a mere evasion of the act, which would become a dead letter, if sales of services were to be tolerated. It follows that the insertion of that word in the conveyance from *Parsons*, does not make this transaction less a sale, nor in the least impeach the negro's title to freedom.

*Radcliff* contra. The act of 1788 having been repealed in 1801, cannot affect a sale in 1803. But allowing that this case might be covered by the act of 1788, still we contend it is not within the provisions of that law, because they are applicable only to sales for life. In *Saber* v. *Hitchcock*, decided in this court in *October* 1800, and from hence carried into the court of errors, it was adjudged that the sale by the executor in that case, of the services of a slave to continue in service so long as the parties should agree, was not within the statute. In the same term, the determination alluded to by the learned counsel on the opposite side, took place. It was in the case of *Fish* v. *Fitcher*, but that was essentially different from the one now before the court.—— There a run-away slave from *New-Jersey*, of 25 years of age, was sold for 20 years, with a power of exercising during that period all the authorities of a master in correcting, imprisoning, &c. and at the expiration of the time to revert to

<div align="right">
NEW-YORK,
Nov. 1803.

Link
v.
Benner.
</div>

NEW-YORK,
Nov. 1805.

Link
v.
Beuner.

his former owner. This was ruled to be an evasion of the act; but the decision was only by a majority of the court, LEWIS and BENSON, justices, dissenting.

KENT, C. J. The principle of the judgment was, that a mere alteration in the words of sale, did not vary the construction we ought to give to the statute.

*Radcliff.* Whatever may have been the principl⸰ of the decision, as it arose under the act of 1788, it cannot govern the present case, which must be determined according to the provisions cf the law of 1801, repealing, without reservation the statute of 1788. It was a substitute for the former regulations, which were then totally done away, and had only a prospective view to future cases; to slaves "thereafter" imported, a sale, therefore, in 1803, of a slave brought into this state in 1794 cannot be within the operation, of the law of 1801. And as the act of 1788 was in 1801 totally repealed, a transaction in 1803 must be equally without the statute of 1788. The repealing act of 1801, abrogates all acts within the purview of the revised laws; the law of 1788 was within the purview of that of 1801, and being so repealed, cannot form one system with the revised laws.

KENT, C. J. Are not all rights acquired, saved by the repealing act of 1801? and had not the negro under the act of 1782 acquired some right?

*Radcliff.* No. A right not to be sold is not a legal right within the act. To acquire a right some act must be done, and the very transfer gave him a right he had not before, for it contains a manumission.

LIVINGSTON, J. Was the declaration that he should be manumitted, a manumission? and supposing the negro not to be free, would he not, if no further act had been done, have continued the servant of his former owner, and entitled under our present law, to demand support of *Parsons?*

*Radcliff.* I conceive not; for the words are like those in a lease where words *in præsenti* are used. There is nothing to prevent the operation of such a manumission.

*Harison,* in reply. The case of *Saber* v, *Hitchcock* pro-

ceeded on the ground of its being a sale by an executor, therefore to be considered as a sale by due course of law, and not as the voluntary act of the party, which alone the statute was meant to prohibit. All slaves imported under the act of 1788 had a clear legal right of not being sold to any new master, and to be free if they were so sold. This right is preserved by the clause in the repealing statute of 1801. That law did not change the situation of slaves ; it preserved all their rights entire. As to the manumission, it ought to have been by way of covenant. There is no making free *in futuro*.

*Per Curiam.* The sale in this case is within the principle of *Fish* v. *Fitcher*, and an evasion of the act of 1788.— Under that law, the negro acquired a right not to be sold ; an important right which secured him against a change of master : he also acquired a further right of being free, if that right was invaded. These rights the proviso of the repealing act of 1801 continued to him unimpaired, for it is not possible to suppose that the legislature intended to leave all slaves imported between June 1785, and October 1801 out of the protection of every law. Judgment must therefore be for the plaintiff.